IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SAID TLEMCANI, | : | CIVIL ACTION NO. |
| | : | 1:17-CV-2547-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| COMMUNITY HEALTH, | : | **NON-FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendant. | : | **MOTION TO DISMISS** |

Plaintiff Said Tlemcani ("Plaintiff") originally filed the above-captioned action on March 2, 2017 in the Superior Court of Fulton County. On July 6, 2017, Defendant Georgia Department of Community Health ("Defendant" or "DCH") removed the action to this Court. Plaintiff alleges that Defendant, his former employer, retaliated against him in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), and engaged in employment discrimination and retaliation against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

The action is before the Court on "Defendant's Motion to Dismiss Plaintiff's Complaint" [3] ("Motion to Dismiss") and "Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint" [7] ("Partial Motion to Dismiss" or "Def. Mot."). For the reasons discussed below, the undersigned **RECOMMENDS** that Defendant's

Motion to Dismiss [3], which addressed the original complaint, be **DENIED as moot**. With regard to the Partial Motion to Dismiss, the undersigned agrees with Defendant that Plaintiff's claim under the GWA is procedurally barred. Accordingly, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss [7] be **GRANTED** and that Plaintiff's claim against Defendant under the GWA be **DISMISSED**.

## I.      BACKGROUND

Plaintiff, proceeding through counsel, filed his original Complaint in this action on March 2, 2017 in the Superior Court of Fulton County, Georgia, asserting one count of retaliation under the GWA. *See* Compl. [1-3] at 4–5. Defendant responded by filing an Answer [2] and a Motion to Dismiss [3] in the Fulton Superior Court on June 2, 2017. In both documents, Defendant asserted that Plaintiff's GWA claim was barred by the applicable statute of limitations. *See* Answer at 1; Mot. Dismiss at 1. On June 22, 2017, Plaintiff filed his Amended Complaint [4] in the Fulton Superior Court, re-asserting his GWA claim and adding four counts under Title VII, for race discrimination, national-origin discrimination, religious discrimination, and retaliation. Am. Compl. ¶¶ 49–90. Plaintiff filed a Response [5] to Defendant's Motion to Dismiss on July 5, 2017. On July 6, 2017, Defendant filed an Answer [6]

2

to the Amended Complaint, and a Partial Motion to Dismiss the Amended Complaint [7], each of which reasserted that Plaintiff's GWA claim is barred by the statute of limitations, in the Fulton Superior Court. Answer [6] at 1; Def. Mot. [7] at 1–2. Additionally, on July 6, 2017, Defendant removed the action to this Court. *See* Notice of Removal [1]. Plaintiff submitted a Response [8] to the Partial Motion to Dismiss on July 20, 2017 ("Pl. Br."), and Defendant filed a Reply [9] on August 3, 2017 ("Def. Reply Br.").

In the Amended Complaint, Plaintiff makes the following factual allegations, which are assumed to be true for the purpose of this discussion. Plaintiff was hired by DCH on April 13, 2009, and on February 1, 2013 was promoted to the position of Benefits Recovery Director. Am. Compl. ¶ 12; Pl. Br., Ex. 2 [8-2] at 1. One of Plaintiff's supervisors, then-Chief Financial Officer ("CFO") Timothy Connell, asked Plaintiff in September 2014 why Plaintiff was fasting, and Plaintiff replied that he was Muslim. Am. Compl. ¶¶ 20–21. Connell then later gave raises to other subordinates but not to Plaintiff. Am. Compl. ¶ 22. Plaintiff filed a report to "HR" regarding Connell's comments and actions, asserting a Title VII violation. Am. Compl. ¶ 22. In July 2015, Connell was replaced as CFO by Elizabeth Brady. Am. Compl. ¶ 25. Brady told Plaintiff to drop his inquiries into the issue of disparate pay. Am. Compl. ¶ 26.

3

In July 2015, Plaintiff reported "waste and abuse" to DCH Commissioner Clyde Reese III specifically relating to "staffing issues, among others." Am. Compl. ¶ 28. On September 17, 2015, Brady "wrote Plaintiff up" for allegedly complaining about work responsibilities. Am. Compl. ¶ 29. Plaintiff then filed a grievance in late September 2015, in part arguing that Brady's actions were "governed by the information passed on to her by Mr. Connell," and that these actions were another violation of Title VII. Am. Compl. ¶ 30. Plaintiff then "suffered from harassment" by the CFO, Brady, and the Deputy CFO, Angela Newell, between October 2015 and January 2016. Am. Compl. ¶ 31. Brady and Newell shouted at Plaintiff, told him to "shut up," and told him "don't speak until spoken to" in meetings and "kick[ed] Plaintiff out of the CFO's office." Am. Compl. ¶ 31. Meanwhile, Plaintiff did not observe "these behaviors" being applied to any of his co-workers. Am. Compl. ¶ 32. Plaintiff was the only employee in the same or similar position whose race was Arab, whose national origin was Moroccan, and whose religion was Muslim. Am. Compl. ¶¶ 33–35.

In December 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 36. On February 3, 2016, Plaintiff filed a grievance against Newell regarding the actions alleged above,

and stated that Newell had breached the code of ethics for executive branch officers as well as the DCH standards of conduct. Am. Compl. ¶ 37.

Plaintiff was suspended on February 11, 2016 for two weeks. Am. Compl. ¶ 38. He was told that among the reasons for the suspension were that he had been acting unprofessionally and disrupting the workplace. Am. Compl. ¶ 39. Plaintiff met with the DCH Commissioner on February 18, 2016, and reported to the Commissioner his ongoing issues with Brady and Newell. Am. Compl. ¶ 41. Plaintiff told the Commissioner that he believed the actions were a result of him "reporting discrimination, waste, abuse, and violation of internal Agency policies and procedures." Am. Compl. ¶ 42.

Plaintiff was then told on February 29, 2016 that he was being terminated. Am. Compl. ¶ 43. Among the reasons Plaintiff received for his termination were that his services were no longer needed, and that he had failed to improve his office demeanor. Am. Compl. ¶ 44–45. Plaintiff filed a Charge of Discrimination with the EEOC on March 15, 2016; the EEOC issued him a Notice of Right to Sue on March 22, 2017. Am. Compl. ¶¶ 47–48.

Count I of Plaintiff's Amended Complaint, for retaliation under the GWA, is the only count that Defendant has moved to dismiss. *See* Def. Mot. at 2. In this count, Plaintiff alleges that he made four "disclosures" protected by the GWA and

consequently received two unlawful retaliatory actions. These four disclosures were Plaintiff's report to HR on Connell; his report of waste and abuse to the DCH Commissioner in July 2015; his late-September 2015 grievance concerning Brady's actions; and his February 3, 2016 grievance regarding Newell's actions. Am. Compl. ¶¶ 50–53. Plaintiff claims his February 11, 2016 suspension and his February 29, 2016 termination constituted unlawful retaliation under the GWA. Am. Compl. ¶¶ 54–55.

Defendant moves to dismiss Plaintiff's GWA claim on the grounds that it is procedurally barred because it was filed after the running of the statute of limitations. Def. Mot. at 1–2. Defendant makes two contentions. First, Defendant states that the GWA contains a statute of limitations of one year. Def. Mot. at 2. According to Defendant, Plaintiff had until February 11, 2017 to file a GWA lawsuit based on Plaintiff's February 11, 2016 suspension, and until February 28, 2017 to file a lawsuit stating a GWA claim based on Plaintiff's February 29, 2016 termination. Def. Mot. at 3 n.1. Plaintiff's original complaint, according to Defendant, was thus due no later than February 28, 2017, yet Plaintiff did not file his Complaint until March 2, 2017, so his GWA claims are time-barred. Def. Mot. at 3. Second, Defendant argues that, even if Plaintiff had filed his Complaint during the limitations period, his claim would still be subject to dismissal because he did not serve Defendant during the limitations period, and did not meet his burden to show that he exercised due diligence in serving

6

the complaint after the period had run, and service therefore cannot relate back to the time of filing. Def. Mot. at 3–4.

## II.   DISCUSSION

### A.   *First Motion to Dismiss*

Plaintiff filed an Amended Complaint on June 22, 2017 in the Superior Court of Fulton County, Georgia. Because Plaintiff filed an Amended Complaint, his original Complaint was replaced by the Amended Complaint, and the original Complaint is no longer the operative pleading. Defendant's first Motion to Dismiss was made moot when Plaintiff timely filed his Amended Complaint. Thus Defendant's first Motion to Dismiss the original Complaint is moot and must be denied on that ground. Accordingly, the undersigned **RECOMMENDS** that Defendant's first Motion to Dismiss [3] be **DENIED as moot.**

### B.   *Partial Motion to Dismiss Amended Complaint*

#### 1.   Standard on a Motion to Dismiss

Defendant filed its Partial Motion to Dismiss on July 6, 2017 in the Superior Court of Fulton County before removing the action to this Court that same day. Although the Partial Motion to Dismiss states that it is a motion under O.C.G.A. § 9-11-12, the Federal Rules of Civil Procedure govern an action after it is removed from state court. Fed. R. Civ. P. 81(c)(1). Accordingly, Federal Rule of Civil

7

Procedure 12, and not the Georgia Civil Practice Act, applies to the Partial Motion to Dismiss.

Defendant seeks to dismiss the GWA claim in the Amended Complaint on the grounds that it is barred because it was filed outside of the applicable one-year statute of limitations. Although Defendant does not specify which subsection of Federal Rule of Civil Procedure 12 is the basis for its Partial Motion to Dismiss, the Court perceives that Defendant's motion is properly characterized as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[1]

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-

_____

[1]In its Reply [9], which was Defendant's first filing in this Court other than the Notice of Removal, Defendant cites both Federal Rules of Civil Procedure 12(b)(1), which permits a motion to dismiss a claim for lack of subject-matter jurisdiction, and 12(b)(6), which permits a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Def. Reply Br. at 1. Defendant cites no authority, and makes no argument, for the proposition that the Court would lack subject-matter jurisdiction over a GWA claim if the statute of limitations in the GWA had run. Moreover, generally a "true" statute of limitations does not divest a court of subject-matter jurisdiction, but rather "restrict[s] the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction." *See In re Pugh*, 158 F.3d 530, 534 (11th Cir. 1998). Additionally, the statute of limitations is commonly raised as a defense under a 12(b)(6) motion. *See, e.g., La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 842, 845 (11th Cir. 2004). Therefore, the Court will not further entertain the notion that it lacks subject-matter jurisdiction over Plaintiff's GWA claim.

movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

2.    Plaintiff's GWA Claim

Defendant first argues that Plaintiff had one year from February 29, 2016, in which to bring a claim under the GWA that his termination constituted unlawful retaliation, and that Plaintiff's Complaint, filed March 2, 2017, is time-barred. Def. Mot. at 2. Second, Defendant argues that, even if Plaintiff's Complaint had been timely filed, Plaintiff's GWA claim is time-barred because Plaintiff did not serve Defendant until May 5, 2017; Plaintiff did not show that he exercised diligence in attempting to serve Defendant as soon as possible after the statute of limitations had run; and the date of service cannot relate back to the date of the filing of the Complaint where Plaintiff has not shown due diligence in attempting to serve Defendant. Def. Mot. at 3–5.

For the reasons discussed below, the Court finds that Plaintiff's claim is barred under Defendant's second argument, that Plaintiff has not shown due diligence in attempting to serve Defendant after the running of the statute of limitations. As to Defendant's first argument, the Court finds that it is a closer question, but ultimately unnecessary to decide in light of the Court's conclusion that Defendant prevails on its second argument. The Court will discuss these two arguments below.

10

a.      Timeliness of Filing of Plaintiff's Complaint

Plaintiff filed an Amended Complaint in the Superior Court of Fulton County on June 22, 2017, asserting a claim under the GWA against Defendant. The Georgia Civil Practice Act, which was the law governing the case at the time, provides that, "Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." O.C.G.A. § 9-11-15(c).[2] Here, Plaintiff asserted a claim under the GWA in his original Complaint referencing the same four predicate disclosures, and the same two alleged retaliatory acts, as in the Amended Complaint. Compl. ¶¶ 39–45; Am. Compl. ¶¶ 50–55.  Therefore, the Amended Complaint relates back to the date of the original Complaint, and for purposes of the statute of limitations in the GWA, the issue is whether the original Complaint was filed before the statute of limitations had run.

The GWA requires plaintiffs to bring a retaliation claim under the GWA "within one year of discovering the retaliation or within three years after the

_____

[2]The federal rule is substantively identical on this point. Fed. R. Civ. P. 15(c)(1) ("An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading").

retaliation, whichever is earlier." O.C.G.A. § 45-1-4(e). Defendant argues that, to assert a claim under the GWA for his termination, Plaintiff was required to file his Complaint by February 28, 2017, yet did not file until March 2, 2017. Def. Mot. at 3. Plaintiff does not dispute that February 28, 2017 was the deadline for purposes of the GWA statute of limitations, at least with regard to his termination. *See* Pl. Br. at 4. Plaintiff disputes, however, that his Complaint was not timely filed. *See* Pl. Br. at 4.

Plaintiff states that he actually filed the Complaint on February 28, 2017, the day it was due. Pl. Br. at 2. In support of this contention, Plaintiff attaches to his Response brief a document containing "Envelope Information" and the "Envelope Id" number 1092704. Pl. Br., Ex. 1 at 1. This document appears to show that Plaintiff's counsel, Kirby Smith, of the Kirby G. Smith Law Firm, LLC, electronically filed three documents to the Fulton Superior Court on February 28, 2017 at 3:53 PM Eastern Standard Time. Pl. Br. Ex. 1 at 1. The first document, containing the file name "complaint tbf.pdf" is listed under the heading "Lead Document." Also listed are documents under the file names "civil filing form.pdf" and "summons.pdf." The fourth page of the document indicates that no fees were paid to file these documents. Pl. Br. Ex. 1 at 4.

The first page of Plaintiff's original Complaint contains, in its case caption, the words, "Date: February 28, 2017." Compl. [1-3] at 1. It also contains a stamp in the

top right corner, however, indicating it was "EFILED" on the date March 2, 2017 by the Clerk of the Fulton County Superior Court. *See* Compl. at 1. To explain this discrepancy, Plaintiff states the following, in his Response brief:

> On March 2, 2017, Plaintiff's Complaint was rejected by the Clerk. The reason cited was a problem with the Civil Case Filing Form. Instead of rejecting only the filing form, the Clerk rejected the Complaint, filing form, and summons. Plaintiff re-filed the Complaint, filing form, and summons the same day.

Pl. Br. at 2. Plaintiff states that the Clerk's rejection was improper under the Georgia Civil Practice Act, and cites O.C.G.A. § 9-11-3(b), which states:

> At the time of filing the complaint for a civil action in superior court or state court, the plaintiff shall file the appropriate civil case filing form with the clerk of the court. The form shall contain complete information and shall be substantially in the form prescribed in Code Section 9-11-133. *The filing of the complaint shall not be delayed for the filing of the case filing form*. If, after a civil action has been filed, the court presiding over the civil action decides that the civil case filing form has not been filed or has been filed incorrectly, the court shall require the plaintiff to file the civil case filing form or an amended form. *In no case shall the failure to accurately complete the civil case filing form required by this Code section provide a basis to dismiss a civil action*.

O.C.G.A. § 9-11-3(b) (emphasis added); *see* Pl. Br. at 4. Plaintiff states that "[t]here was no deficiency in the Complaint," and hence that a deficiency in the filing form cannot provide a basis to dismiss Plaintiff's GWA claim. Pl. Br. at 3–4. In its Reply brief, Defendant argues that Plaintiff has shown no evidence of Plaintiff's brief having been filed on February 28, or rejected by the clerk, or that the rejection was due to an

13

error in the Civil Filing Form—specifically, nothing on Plaintiff's "Envelope Information" document shows that the filings listed on it relate to this case. *See* Def. Reply Br. at 3.

At the outset, the Court agrees with Defendant that the "Envelope Information" document submitted by Plaintiff does not reference this case and therefore does not prove that Plaintiff's counsel attempted to file the Complaint in this case on February 28, 2017. Moreover, Plaintiff has not put forward admissible evidence, such as an affidavit from his counsel, to support the explanation proffered in his Response brief of the failed filing attempt on February 28th. *Cf. Baxley v. Baldwin*, 631 S.E.2d 506, 507–510 (Ga. Ct. App. 2006) (considering opposing affidavits on motion to dismiss on limitations grounds). Notwithstanding the relative paucity of the evidence, neither party has disputed the Court's ability to decide this issue at this stage, in ruling on a partial motion to dismiss.

In the end, while Plaintiff has not submitted any proper evidence on the question, the Court cannot necessarily say that Plaintiff has alleged no facts that, if proven true, would support a finding that the date of the filing of the Complaint relates back to February 28, 2017. If Plaintiff's Complaint was improperly rejected on February 28 due to an error in the Civil Case Filing Form, it appears that O.C.G.A. § 9-11-3(b) would preclude any dismissal on the grounds that the statute of limitations

14

had run. Before recommending dismissal on this ground, the Court would at a minimum entertain an application to perfect the record with proof of the allegations. Nevertheless, it is unnecessary to affirmatively decide this issue in light of the Court's conclusion, below, that Plaintiff's claim is time-barred due to Plaintiff's lack of diligence in serving Defendant with process.

b.    Plaintiff's Diligence in Serving Defendant

Defendant's second argument is that, even if Plaintiff timely filed his complaint, his GWA claim is time-barred because Plaintiff did not serve Defendant within the limitations period, and Plaintiff did not show due diligence in attempting to serve Defendant as quickly as possible after the running of the limitations period. Def. Mot. at 3–5. Defendant states that Plaintiff has the burden of showing that he exercised this due diligence, and that Plaintiff must bring forth specific dates and details and leave no unexplained lapses in his attempts to serve Defendant. Def. Mot. at 4 (citing *Lipscomb v. Davis*, 335 Ga. App. 880, 880–81 (2016)). Plaintiff and Defendant agree that Defendant was served on May 5, 2017, which was 64 days after March 2, 2017.[3] Def. Mot. at 4; Pl. Br. at 2.

---

[3]Plaintiff states that service was perfected on Defendant on that date by the Fulton County Sheriff's Department. Pl. Br. at 2.

15

Plaintiff responds that, in determining whether he was reasonably diligent, the Court is required to look to the "totality of the circumstances" and determine whether the delay in service rose to the level of laches, either by being long enough to make the ascertainment of the truth difficult or long enough to impute dilatoriness to the Plaintiff. Pl. Br. at 6. Plaintiff states that Defendant cannot claim any prejudice from the timing of service, and cannot show bad faith on the part of Plaintiff from the delay given that Plaintiff's EEOC charge was filed March 15, 2016, which had put Defendant on notice of Plaintiff's claims over a year before service was perfected. *See* Pl. Br. at 6. Additionally, Plaintiff claims the delay in service in part resulted because Fulton Superior Court clerk operates differently from other Superior Court clerks in Georgia because the Fulton clerk does not forward complaints to the sheriff's office for service. Pl. Br. at 7. Plaintiff cites Federal Rule of Civil Procedure 4(m), which gives plaintiffs 90 days from the filing of the complaint to serve defendants, and contends that, following that "standard," service in 64 days was timely. *See* Pl. Br. at 8. Ultimately, Plaintiff argues that the 64-day delay in service was done in a "reasonably diligent and timely manner under the circumstances." Pl. Br. at 9.

Defendant replies that Plaintiff has not met his burden on the question of his diligence in attempting to serve Defendant. Def. Reply Br. at 5. Defendant notes that Plaintiff did not offer evidence of any attempts that he made to perfect service on

16

Defendant between March 2 and May 5, 2017, nor did he provide dates and details thereof. *See* Def. Reply Br. at 6. Defendant additionally contends that Plaintiff's legal burden remains the same regardless of the procedures of the Superior Court Clerk. Def. Reply Br. at 6.

Under Georgia law, "[t]he mere filing of a complaint does not commence suit unless timely service is perfected as required by law." *Tate v. Coastal Utilities, Inc.*, 545 S.E.2d 124, 126 (Ga. Ct. App. 2001). In cases where the plaintiff files a complaint before expiration of the statute of limitations, but the plaintiff fails to perfect service before the period of limitations runs, the plaintiff has the burden of showing that due diligence was exercised. *Vasile v. Addo*, 800 S.E.2d 1, 6 (Ga. Ct. App. 2017). If "service is made after the statute of limitations expires, 'the timely filing of the complaint tolls the statute only if the plaintiff shows that he acted in a reasonable and diligent manner in attempting to [e]nsure that a proper service was made as quickly as possible.'" *Lipscomb v. Davis*, 783 S.E.2d 398, 399 (Ga. Ct. App. 2016) (quoting *Slater v. Blount*, 408 S.E.2d 433, 435 (Ga. Ct. App. 1991)). The plaintiff has the burden to show there are no "unexplained lapses" in her attempts to serve the defendant, and that showing must be supported by "specific dates and details." *Lipscomb*, 783 S.E.2d at 399. (internal quotation marks omitted). Moreover, if reasonable and diligent efforts are not made to ensure proper service as quickly as

17

possible, the plaintiff is guilty of laches, and service will not relate back to the time of the filing of the complaint for the purpose of tolling the statute of limitations. *Tate*, 545 S.E.2d at 126.

It is clear in this case that Plaintiff did not serve Defendant as quickly as possible after the running of the statute of limitations under the GWA. Plaintiff failed to perfect service until 64 days after March 2, 2017, the date his original complaint was file-stamped by the Fulton Superior Court Clerk, which in turn was two days after February 28, 2017, the deadline to file under the GWA's statute of limitations. It is equally clear that Plaintiff has failed to carry his burden to bring forward "specific dates and details" regarding his attempts to serve Defendant such that there are no "unexplained lapses" in his service attempts. Instead, Plaintiff has produced no dates or details of any service attempts between March 2, 2017 and May 5, 2017, or any explanation whatsoever. This entire 64-day period is an "unexplained lapse" on the part of Plaintiff.

Plaintiff attempts essentially to argue that his 64-day delay is nevertheless reasonable as a matter of law. Plaintiff states that the Court cannot find the Complaint time-barred because the delay did not prejudice Defendant, did not make the ascertainment of truth in this case difficult, and did not rise to the level of laches. *See* Pl. Br. at 6. He asks the Court to consider the "totality of the circumstances" and

18

analogizes to the 90-day period allowed for service under the Federal Rules of Civil Procedure, implying that the Court should find any delay short of 90 days to be *per se* reasonable. *See* Pl. Br. at 6, 8.

In so doing, Plaintiff mis-states the legal standard applicable to this issue and fails to distinguish controlling case law. There is no case that supports a "totality of the circumstances" test, and that phrase does not appear in either of the opinions Plaintiff cites for that proposition, *Parker v. Shreve*, 535 S.E.2d 332 (Ga. Ct. App. 2000), *overruled on other grounds by Giles v. State Farm Mut. Ins. Co.*, 765 S.E.2d 413 (Ga. 2014), or *Hilton v. Maddox, Bishop, Hayton Frame & Trim Contractors, Inc.*, 188 S.E.2d 167 (Ga. Ct. App. 1972). *See* Pl. Br. at 6.

Additionally, *Parker* did not change the plaintiff's burden to show diligence, and does not require a finding of prejudice, difficulty in the ascertainment of truth, or dilatoriness before a court may find a complaint time-barred for delay in service. Instead, *Parker* repeated the well-established rule that ". . . service relates back to the original filing *only if* the plaintiff shows that he acted in a reasonable and diligent manner in attempting to insure that a proper service was made as quickly as possible." 535 S.E.2d at 334 (emphasis added) (internal quotation marks omitted). *Parker* does cite sources discussing the meaning of laches, which can be found when a person causes "long delay render[ing] the ascertainment of truth difficult" or "such an unjust

delay as to impute dilatoriness to [the delayer]." *Id.* (quoting, respectively, O.C.G.A. § 23-1-25, and *Scoggins v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 408, 410 (1980)). Plaintiff's interpretation of this passage is misguided, however. *Parker* does not *preclude* a court from finding laches unless it finds dilatoriness or prevention of the ascertainment of truth. Instead, *Parker* cites *Hilton* for the proposition that belated service *itself* constitutes laches, and cites another case for the proposition that a finding of laches is appropriate in the absence of due diligence. *Id.* (citing *Hilton*, 188 S.E.2d 167, and *Childs v. Catlin*, 134 Ga. App. 778, 781 (1975)). *Accord Tate*, 545 S.E.2d at 126. In any event, *Parker* is only a "physical precedent" rather than a "binding precedent" under the rules of the Georgia Court of Appeals because one of the three judges concurred in the judgment only. *See* Ga. Ct. App. R. 30(a). Moreover, even if *Parker* had given a different legal rule than the cases discussed above, it would have been abrogated by the later, binding, case *Lipscomb* that requires the plaintiff to bring forth "specific dates and details" to leave no "unexplained lapses" in attempts at service. *See* 783 S.E.2d at 399.

Plaintiff also misunderstands the facts in another case he cites, *Georgia Farm Bureau Mutual Insurance Company v. Kilgore*, 462 S.E.2d 713 (Ga. 1995). In *Kilgore*, service was perfected 15 months after the filing of the complaint, and the Georgia Supreme Court upheld a denial of the defendant's motion to dismiss on

20

limitations grounds. 462 S.E.2d at 715. Plaintiff seizes on this fact to argue that "fifteen months has been upheld as reasonably diligent." Pl. Br. at 5. The legal question, however, was how much time elapsed between the running of the statute of limitations and service—not the time between the filing of the complaint and service. *See* Kilgore, 462 S.E.2d at 715; *accord Baxley v. Baldwin*, 631 S.E.2d 506, 509 (Ga. Ct. App. 2006) ("The trial court has discretion to determine whether a plaintiff has exercised sufficient diligence to effect service *after the running of the statute of limitation*") (emphasis added). In *Kilgore*, service was perfected just two days after the applicable statute of limitations had run. *See* 462 S.E.2d at 715. The fifteen-month period is thus irrelevant, and Plaintiff's 64-day delay is far longer than the two-day delay in *Kilgore*.[4]

The facts in *Parker* also provide a useful contrast with the facts in this case. The plaintiff in that case, Eileen Parker, filed a complaint against the defendant, Helena Shreve, for personal injuries resulting from an automobile collision. 535 S.E.2d at 333. Initially, Parker gave the address for Shreve listed on the accident report and that

---

[4]In this opinion, the Court refers to the 64-day period between the filing of the complaint and the perfection of service, rather than the 66-day period between the running of the statute of limitations and service, to give Plaintiff the benefit of the doubt that he could not have served Defendant until after the Fulton Superior Clerk officially filed his Complaint. In either case, however, Plaintiff's claim must be dismissed because the period of delay is an unexplained lapse in attempts at service.

year's telephone directory. *Id.* About two weeks later, the marshal who attempted service reported this address was old. *Id.* Parker unsuccessfully tried to find a better address and eventually hired a private investigator two days before the running of the statute of limitations to find the correct address. *Id.* The next day, the investigator gave an address and Parker filed a revised summons that day. *Id.* A week later, however, six days after the running of the statute, the marshal called to say there was a problem with the second address. *Id.* Three days later, Parker's investigator provided the correct address, and Parker immediately called the Fulton County marshal's office. *Id.* The defendant was served three days after that, which was 12 days after the running of the statute. *Id.* The Georgia Court of Appeals held that the trial court abused its discretion in finding a lack of due diligence on the part of Parker. *Id.* at 334.

In *Parker*, therefore, the plaintiff attempted service three times, tried to find the address on her own, then hired a private investigator, and served the defendant only 12 days after the running of the statute. *See id.* at 334–34. Here, by contrast, Plaintiff has not alleged any attempts at service before 64 days after the filing of the complaint and 66 days after the running of the statute. Moreover, as Defendant points out, in *Parker* the Defendant's address was uncertain, but here, there was no doubt as to Defendant's address because Plaintiff had been employed at Defendant's address for years. *See* Def. Mot. at 4–5.

22

Plaintiff does not explain his allegation that the operating procedures of the Fulton County Superior Court Clerk's office had something to do with his delay in serving Defendant. *See* Pl. Br. at 7. Even assuming the Fulton Clerk has a different operating procedure than other Superior Court clerks in Georgia, Plaintiff does not put forward any dates or details of why and for how long he was allegedly unable to serve Defendant, or what occurred that finally allowed service to be accomplished on May 5, 2017.[5] As discussed above, Georgia law is clear that Plaintiff has the burden to allege these specific dates and details. By providing none, he fails to meet his burden.

Lastly, Plaintiff's contention that the 90-day period for service under Federal Rule of Civil Procedure 4(m) establishes by analogy a period of presumptive reasonableness, see Pl. Br. at 8, must fail. As discussed above, that is simply not the standard under Georgia law for assessing the diligence of a plaintiff's attempts at service after the running of the statute of limitations.

---

[5]Plaintiff also claims that in Fulton, the Superior Court Clerk does not "forward complaints to the Sheriff's office for service and . . . [p]laintiffs must then arrange service independently." Pl. Br. at 7. Plaintiff does not explain how, despite this allegation, "Service was perfected upon Defendant on May 5 by the Fulton County Sheriff's Department." Pl. Br. at 2.

Plaintiff's GWA claim is therefore time-barred. Accordingly, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss [7] be **GRANTED** as to Plaintiff's GWA claim (Count I) and that such claim be **DISMISSED**.

## III.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [3] be **DENIED as moot**.

**IT IS FURTHER RECOMMENDED** that Defendant's Partial Motion to Dismiss [7] be **GRANTED**, and that Plaintiff's claim brought under the GWA (Count I) be **DISMISSED**.

**IT IS SO RECOMMENDED** this 28th day of September, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE